# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## CASE NO: 5:11-CR-00054–R
## PADUCAH DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

v.

JESSICA LEE CHAMNESS                                        DEFENDANT

## MEMORANDUM AND ORDER

The Government appeals the final sentence imposed by United States Magistrate Judge W. David King in this criminal matter. Following a bench trial, Defendant Jessica Lee Chamness ("Chamness") was found guilty on nine counts of animal cruelty under Kentucky law. Over the Government's objections, the Magistrate Judge grouped the nine counts together pursuant to U.S.S.G. § 3D1.2. The resulting offense level and criminal history yielded a Guideline range sentence between zero to six months imprisonment. At the sentencing hearing, Chamness made a request for leniency because she was two months pregnant. The Magistrate Judge weighed her pregnancy along with the other relevant factors and imposed a sentence of two years of probation. The Government now requests that the Court overturn the sentence because it is both procedurally and substantively unreasonable.

## I.

The facts for this matter are not in dispute. On March 26, 2011, the military police from Fort Campbell, Kentucky, was alerted to the presence of suspicious smells emanating from an on-base residence. Officers entered the residence to conduct a welfare check. Within, they found the carcasses of nine dogs in various states of decomposition. Four of the animals' remains were located in a storage container in the garage. Holes had been drilled in the

container's lid, to facilitate breathing, and the dogs had been sealed inside. The progress of decomposition and squaller in the residence left the unmistakable impression that the animals had been abandoned and left to die.

Further investigation by law enforcement revealed the house was assigned to Chamness and her husband, who was deployed at that time with the United States Army. Neighbors indicated that they had not seen Chamness at the residence for more than two months. She was eventually arrested and charged with nine counts of cruelty to animals in the second degree. *See* KRS § 525.130. Following a one-day bench trial, the Magistrate Judge found her guilty on all nine counts.

On October 5, 2011, the Magistrate Judge held a sentencing hearing. The presentence report calculated Chamness's total offense level as six and a criminal history of one, with a guideline imprisonment range of zero to six months. Presentence Investigation Report ("PIR"), DN 11 p. 10. As permitted by U.S.S.G. § 3D1.2(d), the report grouped each violation of KRS § 525.130 together for sentencing purposes. The Government objected to the aggregation of the offenses under § 3D1.2(d), insisting that "each count of the nine-count Information should form its own unit." PIR, DN 11 p. 13. The Government proposed that the base level offense of six should be increased to eleven because the harm suffered was separate and distinct for each canine. *See* U.S.S.G. § 3D1.4.

The Magistrate Judge overruled the objection. Citing U.S.S.G. § 3D1.2, the Magistrate Judge grouped the nine offenses together for sentencing purposes because they involved "substantially the same harm," the "harm" being society's interest in the humane treatment of animals. Hearing Transcript ("HT"), DN 17 p. 3-5. The Magistrate Judge was also persuaded

by the Guidelines' treatment of federal offenses involving fish, wildlife, and plants, which are automatically grouped together under § 3D1.2. *See* U.S.S.G. §§ 2Q2.1, 3D1.2.

After discussing his rationale for grouping the offenses, the Magistrate Judge allowed Chamness to make a statement before issuing the sentence. During her statement, Chamness revealed she was two months pregnant with twins, a fact not contained within the presentencing materials and previously unknown to the Magistrate Judge. HT, DN 17 p. 13. The new development impacted the Magistrate Judge's decision, evident from his remarks at the hearing:

> Court: Well, I'll tell you, I had typed out the litany here and having Ms. Chamness go to jail for six months just considering the nature and circumstances of the offenses. And I didn't and I still don't quite understand the connection between what happened to these dogs and her ADHD and separation. I don't quite understand it.
> I am going to - - I'm going to change my mind, and I tell you the deal breaker. One thing is her pregnancy, and I hate to give women the advantage because they can get pregnant and men can't. But I'm going to place her on probation for a period of two years, and I am going to provide that she receive any kind of counseling she needs; mental health, parenting classes.
> Right now, that concerns me. It really concerns me that you're bearing children now and what happened to these dogs. I am very concerned. And, frankly, you ought to be more concerned than I am.

HT, DN 17 p. 17-18. The two-year probationary sentence was within the advisory guideline range applicable to Chamness.

## II.

### A. Standard of Review

Where a magistrate judge exercises his discretion and imposes a final sentence, an appeal lies with the judge of the district court, "as though the appeal were to a court of appeals." 18 U.S.C. § 3742(h). A district court uses the same standard of review the court of appeals would use to review the reasonableness of a criminal sentence. Fed. R. Crim. P. 58(g)(2)(D).

Sentencing decisions are reviewed for reasonableness under an abuse-of-discretion

standard.  *United States v. Wettstain*, 618 F.3d 577, 591 (6th Cir. 2010) (citations omitted).

"'Review for reasonableness has both procedural and substantive components.'"  *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008) (quoting *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007)).  Procedural errors entail "failing to calculate (or improperly calculating) the guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."  *Gall v. United States*, 552 U.S. 38, 51 (2007).

If procedurally sound, the substantive reasonableness of a sentence is reviewed under abuse of discretion.  *Jeross*, 521 F.3d at 569.  "A sentence may be substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor."  *United States v. Brogdon*, 503 F.3d 555, 559 (6th Cir. 2007) (citing *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007)).  Where the defendant is sentenced within a properly calculated guideline range, the sentence "is afforded a rebuttable presumption of reasonableness."  *Id.* (citations omitted).

**B. Discussion**

The Government contends Chamness's sentence is procedurally unreasonable because the Magistrate Judge grouped the nine counts of animal cruelty together.  It further states her sentence is substantively unreasonable because the Magistrate Judge improperly weighed her pregnancy.  The Court bifurcates its analysis accordingly.

1. Grouping under U.S.S.G. § 3D1.2

When defendants are convicted on more than one criminal count, the sentencing court

must "group the counts in conviction into distinct Groups of Closely Related Counts . . . by applying the rules specific in § 3D1.2" and then "[d]etermine the offense level applicable to each Group." U.S.S.G. § 3D1.1(a)(1)-(2). The combined offense level for the defendant is then calculated by taking all the offense groups and applying the rules described in § 3D1.4. *Id*. § 3D1.1(a)(3).

The present controversy centers on § 3D1.2 and how multiple criminal counts are grouped under the Sentencing Guidelines.[1] Its subsections "set forth circumstances in which criminal counts are to be grouped together into a single Group." U.S.S.G. § 3D1.2, Application Note 1. Counts involving "*substantially the same harm* shall be grouped together." *Id*. (emphasis added). "This provision is intended to prevent double counting of closely related offense behavior." *United States v. Lenoci*, 377 F.3d 246, 256 (2d Cir. 2004) (citation and internal quotation marks omitted)

Subsections (a) through (d) set out the varying circumstances when offenses involve "substantially the same harm":

> (a) When counts involve the same victim and the same act or transaction.
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the

---

[1] Though neither party disputes this aspect of the sentencing, the Court concludes the calculation of a base level of six was correct. Animal cruelty under Kentucky law is a Class A misdemeanor. *See* KRS § 525.130(4). Any Class A misdemeanor not covered by a specific Chapter 2 offense guideline is an offense level of six. U.S.S.G.§ 2X5.2(a).

offense guideline is written to cover such behavior.
U.S.S.G. § 3D1.2(a)-(d). Specific offenses that must be grouped together under the Guidelines are listed at the end of the section. Included within this list are offenses under U.S.S.G § 2Q2.1, which cover federal criminal offenses related to fish, wildlife, and endangered species.

For criminal counts not referenced at the end of § 3D1.2, "grouping under [§ 3D1.2] may or may not be appropriate" and the court should adopt a "case-by-case determination . . . based upon the facts of the case and the applicable guidelines." *Id.* As one circuit has put it, the grouping rules lump criminal offenses into three categories: "(1) those to which the section specifically applies; (2) those to which the section specifically does not apply; and (3) those for which grouping may be appropriate on a case-by-case basis." *United States v. Salter*, 241 F.3d 392, 394 (5th Cir. 2001). The parties agree that Kentucky's prohibition on animal cruelty should be judged according to the final category.

Distilled down, the Government challenges the Magistrate Judge's ruling that only people can be "victims" under § 3D1.2 and that the "harm" suffered through the commission of each criminal count was societal. The Government implies that each dog is a different "victim" under subsections (a) and (b) of § 3D1.2. Alternatively, the Government offers that the harm suffered by the dogs was particularized to each animal rather than societal, precluding a finding that Chamness's criminal offenses caused "substantially the same harm." While neither argument is unreasonable, the regulation's plain language and its explanatory passages persuade the Court that the Magistrate Judge did not err in grouping the offenses.

The scope of subsections (a) and (b) for § 3D1.2 is couched in terms of "victims" and "non-victims." Who or what qualifies as a "victim" is addressed in Application Note 2 and the

commentary for § 3D1.2. The pertinent part distinguishes between victim and victimless crimes:

> The term "victim" is not intended to include indirect or secondary victims. Generally, there will be one *person* who is directly and most seriously affected by the offense and is therefore identifiable as the victim. For offenses in which there are no identifiable victims (e.g., drug or immigration offenses, where society at large is the victim), the "victim" for purposes of subsections (a) and (b) is the societal interest that is harmed. In such cases, the counts are grouped together when the societal interests that are harmed are closely related.

U.S.S.G. § 3D1.2, Application Note 2 (emphasis added). The commentary provides additional guidance on the grouping of victimless crimes:

> Cases involving injury to distinct victims are sufficiently comparable, whether or not the injuries are inflicted in distinct transactions, so that each such count should be treated separately rather than grouped together. Counts involving different victims (or societal harms in the case of "victimless" crimes) are grouped together only as provided in subsection (c) or (d).

*Id.* § 3D1.2, cmt. background (1998). The "nature of the interest" invaded by each offense should guide the judicial categorization of victim and victimless crimes. *See United States v. Bruder*, 945 F.2d 167, 170 (7th Cir. 1991).

With respect to the term "victim," § 3D1.2 lays out a binary definition of the word: victims of criminal offenses are either "persons" or "society." U.S.S.G. § 3D1.2, Application Note 2. When a person is "seriously affected by the offense," he or she is the "victim" for grouping purposes. The presence of the word "person" to describe "victim" in Application Note 2 creates the clear inference that a "person-less" crime is also victimless. Though the ill-fated animals were "victims" of Chamness's neglect in the broadest sense of the word, the Sentencing Commission's intent to exclude nonpersons from the victim-metric is clear. *Cf. United States v. Knighton*, 171 F. App'x 939, 942 (3d Cir. 2006) ("Absent a constitutional or statutory conflict, the Sentencing Guidelines provisions, as interpreted by the Application Notes, control the

computation of the recommended Guidelines sentence." (citing *United States v. Morris*, 139 F.3d 582, 584 (8th Cir. 1998))).  The Government's proposition that subsections (a) and (b) prevent the grouping of Chamness's offenses is incorrect as an animal is not a "victim" under § 3D1.2.

The Government contends that grouping is improper because multiple dogs suffering is not "substantially the same harm."  The argument overlooks the conclusion that crimes against animals are victimless crimes.  As offenses committed against nonpersons are victimless, they are unaffected by subsections (a) and (b) of § 3D1.2.  *See* U.S.S.G. § 3D1.2, cmt. background (1998) ("Counts involving different victims (or societal harms in the case of "victimless" crimes) are grouped together only as provided in subsection (c) or (d)."); *see also United States v. Gable*, 26 F.3d 133, at *6 (9th Cir. 1994) (table) (where societal harms are sufficiently different, district court's rejection of grouping argument was accurate).  Given the amorphous societal injury associated with victimless crimes, the resulting harm from animal cruelty is the same for all counts.

The decision by the sentencing commission to group federal offenses against animals corroborates the argument that cruelty to multiple animals constitutes substantially the same harm.  Section 3D1.2 automatically groups federal criminal offenses involving fish, wildlife, and plants.  *See id*. §§ 2Q2.1, 3D1.2.  Cases evaluating the grouping of these offenses allude to a societal harm rather than a particularized harm to each animal affected by the criminal act.  *E.g.*, *United States v. Maas*, 428 F. Supp. 2d 888, 890-91 (E.D. Wis. 2006) (deciding against grouping of firearms offense and wildlife offense because "societal interest served by the wildlife statute is the preservation and maintenance of wildlife"); *United States v. Asper*, 753 F. Supp. 1260, 1288 (M.D. Pa. 1990) (multiple offenses for the possession, importation, and transportation of

endangered species encroached on substantially the same interest); *see also United States v. Bernal,* 90 F.3d 465, 466 n. 2 (11th Cir. 1996) (grouping offenses related to the attempted export of endangered species).  The purpose behind these federal criminal offenses - to protect animals from human inference - is controlling on the present matter.

The Government protests the comparison of the fish, wildlife, and plants offenses covered under § 2Q2.1 to Kentucky's animal cruelty law.  It stresses that the harm that these federal statutory regimes guard against is fundamentally different from the harm of animal cruelty.  Despite their obvious dissimilarities, these federal and state provisions promote the same core principle: safeguarding animals fosters the general welfare of a community.  With affronts to this interest, whether from the depopulation of an endangered species or the mistreatment of a house pet, the primary injury is societal instead of specific to each animal. Courts consistently ratify this principle, arguing that the promotion of community mores operates as the underpinning for laws protecting animals.  *See United States v. Stevens*, 533 F.3d 218, 239 (3d Cir. 2008) (Cowen, J. dissenting) ("[C]ruelty to animals is a form of antisocial behavior that erodes public mores and can have a deleterious effect on the individual inflicting the harm."); *C. E. America, Inc. v. Antinori*, 210 So. 2d 443, 446 (Fla. 1968) (in dispute over bull fighting, the court found that "[t]he state is deeply interested in the lives and well-being of all her citizens, and of those who come within her borders, and much more so than she is in the lives and safety of the bulls"); *Waters v. People*, 23 Colo. 33, 35 (1896) ("[Anti-cruelty statutes] aim is not only to protect these animals, but to conserve public morals, both of which are undoubtedly proper subjects of legislation.  With these general objects all right-minded people sympathize.").

Society harbors strong affection for domesticated animals, perhaps none more so than dogs. For these reasons, Chamness's behavior was more than cruel; it exhibited a depraved and inhuman disregard for dogs in her care. Nevertheless, nine counts of animal cruelty represent "substantially the same harm" under the Sentencing Guidelines. The Magistrate Judge was correct to group these offenses together under § 3D1.2(d) and Chamness's sentence was not procedurally unsound.

### 2. Consideration of Chamness's pregnancy

The Government declares that Chamness's sentence is flawed because the Magistrate Judge considered her pregnancy when fashioning the sentence of two years probation. The Government argues it was improper for the Magistrate Judge to base its sentence on Chamness's pregnancy. In fact, the Government proposes a rule whereby a sentence would be *per se* substantively unreasonable any time pregnancy was used as a factor.

The Government's position is not without some merit. The Sentencing Guidelines disfavor the consideration of the defendant's family situation when pronouncing sentence. U.S.S.G. § 5H1.6. Preferential treatment to women that become pregnant before sentencing has the added danger of offering women "a way out" of imprisonment. *See United States v. Pozzy*, 902 F.2d 133, 139 (1st Cir. 1990) (citing with disfavor preferable sentences for women simply because of a pregnancy). Given the physiological differences between men and women, judges should refrain from using pregnancy as a factor when sentencing men and women charged with similar offenses. *See id.* (where husband and wife were sentenced together for same offense, downward departure for the wife due to her pregnancy was improper).

Still, courts imposing punishment are not precluded from weighing as a factor a

defendant's family ties and responsibilities. *See Gall*, 552 U.S. at 58 (factors disfavored by the Guidelines may be relied upon). The presence of an unborn child is not an impermissible factor for a judge to consider when pronouncing a sentence. *E.g.*, *United States v. Diegert*, 916 F.2d 916, 918-19 (4th Cir. 1990) (remand to distrsict court was proper to determine if defendant's pregnancy and family history justified downward departure); *United States v. Pokuaa*, 782 F. Supp. 747, 747-49 (E.D.N.Y. 1992) (downward departure appropriate where mother was pregnant so as to ensure the child was conceived in defendant's native Ghana); *United States, v. Denoncourt*, 751 F. Supp. 168, 170 (D. Hawaii 1990) (considering a criminal defendant's pregnancy when deciding to sentence her within the guideline range). Indeed, the family circumstances of a criminal defendant often play an important role when judges craft sentences from the Guideline's factors. *See*, *e.g.*, *United States v. Munoz-Nava*, 524 F.3d 1137, 1148 (10th Cir. 2008) (variance of a criminal sentence justified where defendant was primary caretaker and sole supporter of eight-year-old son); *United States v. Schroeder*, 536 F.3d 746, 756 (7th Cir. 2008) (remand ordered so the district court could consider the family circumstances of the defendant as a mitigating factor); *United States v. Johnson*, 964 F.2d 124, 129 (2d Cir. 1992) (defendant offered extraordinary circumstances when she had sole responsibility for three young children); *United States v. Pena*, 930 F.2d 1486 (10th Cir.1991) (affirming downward departure where defendant supported infant and minor daughter with infant); *United States v. Arize*, 792 F. Supp. 920, 921 (E.D.N.Y. 1992) (downward departure warranted where court was concerned that sentence would result in loss of custody of child). These decisions further the precept that courts are "reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing." *Johnson*, 964 F.2d at 129.

The explicit references to Chamness's pregnancy give the Court pause.  Furthermore, the Court believes that under these circumstances it would have opted for a different, stiffer penalty. Nonetheless, "the fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."  *Gall*, 552 U.S. at 51.  The Magistrate Judge did not unfairly weigh her pregnancy and for that reason the sentence is not substantively unreasonable.

**C. Conclusion**

In conclusion, IT IS HEREBY ORDERED that Chamness's sentence is AFFIRMED and the Government's appeal is hereby DISMISSED.